# FILED

**IN THE UNITED STATES DISTRICT COURT** PM 3: 34
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION** CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

**DIAMONDBACK FIREARMS, LLC,**
A Florida limited liability company,

        Plaintiff,

  vs.

**CASE NO:** 6:10-cv-1664-Orl-28DAB

**SAEILO, INC., d/b/a KAHR ARMS,** a
Delaware corporation, and **KOOK JIN
MOON,** an individual,

**JURY TRIAL REQUESTED**

        Defendants.

**INJUNCTIVE RELIEF REQUESTED**

_____/

## COMPLAINT

Plaintiff Diamondback CNC, L.L.C., through its undersigned counsel, for its

Complaint against Defendants Saeilo, Inc. d/b/a Kahr Arms, and Kook-Jin Moon, states:

### PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Diamondback CNC, L.L.C. ("Diamondback") is a Florida limited

liability company.

2.    Defendant Saeilo, Inc. d/b/a Kahr Arms ("Kahr") is, upon information and

belief, a Delaware corporation having its principal place of business in Delaware, and

which sells and offers for sale products within this division of the Middle District of

Florida.

3.    Defendant Kook-Jin Moon, upon information and belief, is a resident of

New York State.

4.     This is a claim for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 seeking a final judgment that Plaintiff has not infringed Defendants' United States Patent.

5.     As set forth in more detail below, Defendants have asserted that certain products of Diamondback infringe Defendants' patent in the United States, including sales of such products within this Division of the Middle District of Florida.

6.     Defendants have subjected themselves to *in personam* jurisdiction as Defendants have sent letters threatening legal action for patent infringement to Diamondback in this judicial district. Additionally, upon information and belief, Kahr is subject to general jurisdiction as it is engaged in substantial and not isolated activity in this state and judicial district and maintains continuous and systematic business contacts in Florida through its wholesalers and dealers located in the state. Moreover, upon information and belief, Defendants are engaged in substantial and not isolated activity in this state, as they purport to have expended considerable resources commercializing the technology claimed by the patent-in-suit in this state and this judicial district, and have received income from the sale of the commercialized invention from this judicial district.

7.     Venue properly lies within this judicial district and division, pursuant to 28 U.S.C. §§1391(b) and (c).

### U.S. Patent No. 5,502,914

8.     U.S. Patent No. 5,502,914 (the "'914 patent") issued from U.S. Patent Application Serial No. 08/081,169, filed on June 25, 1993 ("the '169 application"). A true and correct copy of the '914 Patent is attached hereto as Exhibit 1.

2

9.    In a letter sent to Plaintiff in this judicial district, Defendants have represented to Plaintiff that they are the owners of the '914 Patent and have accused Plaintiff of infringing said patent.

10.    At the time of filing the '169 application, it contained only independent claim 1 and dependent claims 2-7.

11.    Independent claim 1 of the '169 application recited a firing mechanism comprising, inter alia, a cocking cam, a striker for detonating a loaded cartridge primer, and a spring for biasing said striker forwardly, said cam including an apex area which draws said striker rearwardly against said bias, and then releases said striker to perform said detonation.

12.    Claims 1-7 of the original '169 application did not expressly recited "a half-cocked position."

13.    On November 29, 1993, the U.S. Patent and Trademark Office ("the USPTO") issued a first Office Action in the '169 application, including a rejection of claims 1-7 under 35 U.S.C. § 102(b) as anticipated.

14.    In an Amendment dated March 23, 1994, Applicant argued that, "As claimed by applicant, the present invention indicated clearly that the cam draws back the striker from a half-cocked position, to full-cocked before releasing it."

15.    On June 3, 1994, the USPTO issued a second Office Action in the '169 application, including a rejection of claims 1-6 under 35 U.S.C. § 102(b), and a rejection of claim 7 under 35 U.S.C. § 103(a).

16.    In response to the second Office Action, an Amendment dated September 6, 1994 was made in which claims 1-7 were cancelled and new claims 8-20 were added.

3

Claims 8 and 20 were independent claims, with claims 9-19 depending directly or indirectly from claim 8.

17.     The new independent claims 8 and 20 recited, inter alia, a striker moveable into engagement with a cocking and releasing element (claim 20 recited a cocking and releasing cam, instead of an element) in a first position and to a half-cocked position intermediate a fully-cocked position and a striking position in response to movement of a slide from a retracted position toward a forward position, the cocking and releasing element (or cam) in the first position maintaining the striker in the half-cocked position.

18.     With these amendments, the Examiner allowed the new claims of the '914 patent.   The patentees' arguments and the amendments made in response to the substantive prior art rejections, create prosecution history estoppel with regards to any firearm that does not include a cocking and releasing element or cam that maintains a striker in a half-cocked position.

19.     The '914 patent states that the uncocked position is shown in Figure 2.

20.     As shown in Figure 2, the striker spring is completely unloaded and incapable of imparting any energy to the striker, as is consistent with the plain meaning of "uncocked."

21.     The '914 patent states that the half-cocked position is shown in Figures 4 and 5.

22.     As shown in Figures 4 and 5, the striker spring is partially loaded and the striker is positively restrained by engagement with the cocking and releasing element or cam, as is consistent with the plain meaning of "half-cocked."

4

23.    The '914 patent further defines the half-cocked position as a position wherein "the striker 24 does not possess, in theory, enough energy to detonate the primer if it releases at that point."

24.    An advertising brochure for the KAHR K9 pistol was enclosed with the amendment by the patentees.  The patentees represented that this pistol "embodies the striker cocking and firing mechanism of the present invention."

25.    In reference to the striker cocking and firing mechanism, the advertising brochure stated that "[t]he pre-loaded striker significantly reduces the trigger weight compared to traditional "trigger-cocking" designs."

26.    Consistent with the plain meaning of "half-cocked," and further in view of the statements and definitions provided during the prosecution of the '169 application, a cocking and releasing element or cam that maintains a striker in a half-cocked position, as recited by all the independent claims of the '914 patent, requires a cocking and releasing element or cam that maintains a striker in a position where a striker spring is at least partially loaded, though not sufficiently to detonate the primer if released.

27.    As recognized by the Applicant, a striker is in an uncocked position when the striker spring is completely unloaded.   The half-cocked position and uncocked position are distinct states of the striker and are not functional equivalents.

28.    A firearm cannot be considered to have a cocking and releasing element or cam that maintains a striker in a half-cocked position if the element or cam only transiently maintains the striker in the half-cocked position while the trigger is being pulled.  The cocking and releasing element or cam must maintain the striker in the half-cocked position in the absence of user engagement of the trigger.

5

29.     A firearm that does not include a cocking and releasing element or cam that maintains a striker in a half-cocked position does not infringe any claim of the '914 patent.

### Plaintiff's DB390 Line and Defendant's Threats of Infringement

30.     Plaintiff manufactures and sells a line of firearms known as the DB380 line.

31.     The firing mechanism used in all the firearms of the DB380 line is functionally identical. Unless the trigger is actually being pulled, this firing mechanism always maintains the striker in the uncocked position, with the striker spring completely unloaded.

32.     No firearm in the DB380 line includes a cocking and releasing element or cam that maintains a striker in a half-cocked position.

33.     Counsel for the Defendants sent a letter dated September 22, 2010, to Diamondback. A true and correct copy of the correspondence is attached hereto as Exhibit 2.

34.     In Defendants' letter, Defendants purport to be the owners of the '914 Patent.

35.     Defendants further assert that products of Diamondback, specifically the 380 series of pistols, "appear to have a striker cocking and firing mechanism that is substantially similar to the striker cocking and firing mechanism that is the subject of the ['914 Patent]."

36.     Defendants' letter demanded that Diamondback furnish proof that its 380 series pistols do not infringe the claims of the '914 Patent.

37.     Defendants' letter alleging infringement and demanding of Plaintiff proof of non-infringement of the '914 Patent has presented a substantial controversy between the parties, who have adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment as to Plaintiff's non-infringement of the '914 Patent.

38.     Plaintiff has not infringed, directly or indirectly, Defendants' '914 Patent, and cannot therefore be liable for any such claims.

## COUNT ONE

### Declaratory Judgment of Non-Infringement of the '914 Patent

39.     Count One is an action under 28 U.S.C. § 2201 seeking a Declaratory Judgment that Plaintiff has not infringed the '914 patent.

40.     Plaintiff herein restates and incorporated by reference into this Claim the allegations of ¶¶ 1-39, above, inclusive.

41.     No firearm in the DB380 line infringes any claim of the '914 patent at least because no firearm in the DB380 line includes a cocking and releasing element or cam that maintains a striker in a half-cocked position, and Defendants are not entitled to any equivalents for this limitation due to prosecution history estoppel.

42.     The conduct of Defendants has presented a substantial controversy between the parties, who have adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment as to Plaintiff's non-infringement of the '914 Patent.

43.    Wherefore, Plaintiff is entitled to a Declaratory Judgment that it does not directly or indirectly infringe the '914 patent, whether under a theory or literal infringement or infringement under the doctrine of equivalents.

44.    This case is exceptional under 35 U.S.C. § 285.

WHEREFORE, Plaintiff asks this Court to enter judgment against Defendants:

a)    Finding the '914 patent is not infringed by any products or methods of Plaintiff;

b)    Prohibiting Defendants from making further claims of litigation against Plaintiff for patent infringement;

c)    Finding this case is exceptional under 35 U.S.C. §285 and awarding Plaintiff its attorney fees and costs; and

d)    Such and other relief as the Court deems appropriate.

### JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted November 9, 2010.

Brian R. Gilchrist, FL Bar No. 774065
bgilchrist@addmg.com
Ryan T. Santurri, FL Bar No. 015698
rsanturri@addmg.com
Justin R. Sauer, FL Bar No. 055043
jsauer@addmg.com
ALLEN, DYER, DOPPELT,
MILBRATH & GILCHRIST, P.A.
255 South Orange Avenue, #1401
Post Office Box 3791
Orlando, FL  32802-3791
Telephone:     (407) 841-2330
Facsimile:     (407) 841-2343

Attorneys for Plaintiff,
Diamondback Firearms, LLC

9